UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

IAIN CURTIS-SHANLEY

*Debtor.*

IAIN CURTIS-SHANLEY,

*Appellant,*

v.

CAPITAL ONE, N.A., CREDIT ONE BANK, MISSION LANE,

*Appellees.*

No. 25-CV-7508 (KMK)

OPINION & ORDER

Appearances:

Iain Curtis-Shanley
Hastings-on-Hudson, NY
*Pro Se Appellant*

Matthew R. Brooks, Esq.
Troutman Pepper Hamilton Sanders LLP
New York, NY
*Counsel for Appellee Capital One, N.A.*

Michael Alltmont, Esq.
Sessions, Israel & Shartle, LLC
Metairie, LA
*Counsel for Appellee Credit One Bank*

KENNETH M. KARAS, United States District Judge:

Iain Curtis-Shanley ("Appellant"), proceeding pro se, appeals from an order of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying Appellant's Motion to Compel and Sanction (the "Motion") Capital One, N.A. ("Capital One"), Credit One Bank ("Credit One"), and Mission Lane (together, "Appellees"). (*See generally* Not. of Appeal (Dkt. No. 1).)[1] For the reasons stated below, the appeal is denied, and the Bankruptcy Court's order is affirmed.

## I. Background[2]

On April 28, 2023, Appellant filed for Chapter 7 protection in the Bankruptcy Court. (*See generally* Ch. 7 Petition (the "Petition"), *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Apr. 28, 2023), Dkt. No. 1.) Appellant's initial schedules identified Capital One as a creditor for two accounts. (*Id.* at 30.) The first account, ending in 8524, related to credit card debt incurred on April 25, 2023, for $3,462.10. (*Id.*) The second account, ending in 2360, related to credit card debt incurred on April 24, 2023, for $785.42. (*Id.*) Credit One and Mission Lane were not identified as creditors in Appellant's initial schedules. (*See generally id.*)

[1] The Motion was initially characterized as a Motion to Compel, Sanction, and Extend Deadline, in which Appellant requested "an extension in the matter of the certificate requirements following the meeting of the creditors." (Bankr. Mot. 1). Since Appellant addressed only his requests to compel and sanction in his Notice of Appeal and his Brief, (*see generally* Not. of Appeal; Appellant's Br. (Dkt. No. 9)), the Court will only address those requests. Additionally, although Mission Lane is named as an Appellee, Appellant contends that it "failed to respond with any papers" in the underlying proceeding, (Not. of Appeal 1), and Mission Lane has not appeared in the instant Appeal, (*see generally* Dkt.).

[2] "Because of the significant overlap between the relevant facts and procedural history, the Court recites both as one narrative." *In re Manchanda*, No. 24-CV-7284, 2025 WL 2731041, at *1 (S.D.N.Y. Sept. 24, 2025) (citing *Guida v. Fed. Deposit Ins. Corp.*, No. 11-CV-9, 2020 WL 2615924, at *1 (E.D.N.Y. May 21, 2020)).

On March 10, 2025, Appellant filed amended schedules. (*See generally* Am. Schedules, *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Mar. 7, 2025), Dkt. No. 21.) Appellant's amended schedules identified Capital One as a creditor for two additional accounts not included in Appellant's initial schedules. (*Id.* at 4.) The first additional account, ending in 7709, related to credit card debt incurred on September 23, 2024, for $2,039.77. (*Id.*) The second additional account, ending in 8881, related to credit card debt incurred on February 19, 2025, for $3,182.56. (*Id.*) Appellant's amended schedules also identified Credit One as a creditor for two accounts not included in Appellant's initial schedules. (*Id.* at 5.) The first account, ending in 5037, related to credit card debt incurred on September 6, 2023, for $1,623.54. (*Id.*) The second account, ending in 5034, related to credit card debt incurred on February 19, 2025, for $1,209.52. (*Id.*) Appellant's amended schedules also identified Mission Lane as a creditor for an account ending in 0616, related to credit card debt incurred on November 2, 2023, for $2,998.61. (*Id.* at 18.) In sum, Appellant's amended schedules identified Appellees as creditors for five accounts not included in Appellant's initial schedules (collectively, the "Debts"). After filing his amended schedules, Appellant made a series of phone calls to Appellees, in which he requested Appellees cancel the Debts. (*See generally* Mot. to Admit Audio Trs. as Evid., *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Aug. 6, 2025), Dkt. No. 40.)

Appellant filed his Motion on June 15, 2025. (*See generally* Mot., *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. June 16, 2025), Dkt. No. 23 ("Bankr. Mot"). In his Motion, Appellant alleged that Appellees "refused to stop trying to collect the debts . . . [and] continue[d] to charge [Appellant] interest on the debts, refuse[d] to discharge the debt, and continue[d] to report [Appellant] as being increasingly . . . past-due and delinquent on his accounts." (*Id.* at 2.) Accordingly, Appellant requested that the Bankruptcy Court compel Appellees to:

> 1) clear all [of Appellant's] debts, 2) cease to report his accounts as currently or ever delinquent, 3) contact the credit agencies immediately and inform them that [Appellant] owes them no balance and is not and never has been delinquent on his accounts, [and] 4) work with all major credit agencies . . . to immediately repair and correct [Appellant's] credit score and credit report . . . .

(*Id.* at 11.) In addition, Appellant requested "$10,000 . . . from each creditor, in punitive and compensatory damages . . . for repeated contempt of court and willful and knowing violation of the stay of collection . . . ." (*Id.*)

On July 17, 2025, Capital One filed its Opposition. (*See* Capital One's Opp'n to Mot., *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. July 17, 2025), Dkt. No. 26.) On August 21, 2025, Credit One filed its Opposition. (*See* Credit One's Opp'n to Mot., *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Aug. 21, 2025), Dkt. No. 36.) On August 22, 2025, Appellant filed his Reply, (*See* Reply, *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Aug. 22, 2025), Dkt. No. 38), and requested an entry of default judgment against Appellees (the "Default Request"), (*see* Default Req., *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Aug. 22, 2025), Dkt. No. 39). In his Default Request, Appellant argued that his Motion was adversarial, and thus, pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), Appellees had 21 days to answer, which Appellees failed to do, rendering default judgment appropriate pursuant to Federal Rule of Civil Procedure 56(e)(2). (*Id.* at 1–2.)

On August 29, 2025, the Bankruptcy Court issued a decision denying the Motion (the "Bankruptcy Court Decision"). (*See* Bankruptcy Court Decision, *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Aug. 29, 2025), Dkt. No. 45.) The Bankruptcy Court explained that, according to Appellant's amended schedules, the Debts "were incurred after the Petition Date[,]" (*id.* at 6), and while "pre-petition debts are subject to a Chapter 7 bankruptcy discharge[,] . . . the automatic stay does not generally enjoin efforts to collect debts incurred post-petition[,]" (*id* at

2). Consequently, the Bankruptcy Court held that Appellees "did not violate the automatic stay by seeking repayment of the post-petition credit card debt incurred by [Appellant]." (*Id.* at 7.) Also on August 29, 2025, the Bankruptcy Court issued an order granting Appellant a discharge pursuant to 11 U.S.C. § 727 and closing Appellant's Chapter 7 bankruptcy case. (*See* Discharge of Debtor and Order of Final Decree 1, *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y.) (Dkt. No. 47).)

On September 2, 2025, Appellant filed his Notice of Appeal, (*see* Not. of Appeal, *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Sept. 2, 2025), Dkt. No. 49), which the Court received from the Bankruptcy Court on September 10, 2025, (*see* Not. of Appeal). On January 5, 2026, Appellant filed a letter-motion seeking to proceed on the original record. (*See* Mot. to Proceed on the Original Record 2 (Dkt. No. 8).) On the same day, Appellant filed his Brief. (*See* Appellant's Br (Dkt. No. 9).) On February 17, 2026, Capital One filed its Brief. (*See* Capital One's Br. (Dkt. No. 15).) On March 19, 2026, Credit One filed its Brief. (*See* Credit One's Br. (Dkt. No. 16).) On March 21, 2026, Appellant filed his Reply Brief. (*See* Appellant's Reply Br. (Dkt No. 17).) On April 7, 2026, the Court issued an order granting Appellant's Motion to Proceed on the Original Record. (*See* Order (Dkt. No. 18).)

## II. Discussion

### A. Standard of Review

District courts have jurisdiction to review final bankruptcy orders. *See* 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges . . . ." (footnote omitted)); *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (noting that district courts have jurisdiction to "review 'all final judgments, orders, and decrees' of the bankruptcy courts" (citation

omitted)). "[A] bankruptcy judge's order is final if it completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Pegasus Agency, Inc.*, 101 F.3d 882, 885 (2d Cir. 1996) (quotation marks omitted). "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re DeFlora Lake Dev. Assocs., Inc.*, 629 B.R. 354, 358 (S.D.N.Y. 2021) (quotation marks omitted) (quoting *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016)).

In general, "[a] district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions de novo." *In re Fogarty*, No. 18-CV-3324, 2020 WL 13442114, at *2 (E.D.N.Y. July 1, 2020) (citing *In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996)), *aff'd in relevant part and remanded*, 39 F.4th 62 (2d Cir. 2022). However, like other discretionary decisions of the Bankruptcy Court, the Court will review the Bankruptcy Court's decision to lift the automatic stay for abuse of discretion. *See Boissard v. Specialized Loan Servicing, LLC*, No. 19-CV-4280, 2020 WL 9815999, at *3 (E.D.N.Y. Sept. 25, 2020) (collecting cases); *Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 507 (E.D.N.Y. 2018) (reviewing decision to lift automatic stay for abuse of discretion).

B. Analysis

1. Whether Appellees Violated the Automatic Stay

Before turning to Appellant's arguments on appeal, the Court will consider the Bankruptcy Court's finding that Appellees "did not violate the automatic stay by seeking repayment" of the Debts. (Bankruptcy Court Decision 7.) "In a Chapter 7 bankruptcy, a debtor receives a discharge of debts under the authority of § 727(b) of the Bankruptcy Code." *Hawkins v. Tyree*, 483 B.R. 598, 599 (S.D.N.Y. 2012) (citation omitted). In particular, "a [bankruptcy]

discharge . . . discharges the debtor from all debts that arose before the date of the order for relief . . . ." 11 U.S.C. § 727(b).[3] Accordingly, a discharge under Chapter 7 "does *not* operate against debts that arose *after* the petition date." *In re Grubin*, 476 B.R. 699, 710 (Bankr. E.D.N.Y. 2012) (emphases in original) (citation omitted); *see also In re Hicks*, 144 B.R. 419, 420 (Bankr. E.D. Ark. 1992) ("Debts incurred after the date of the filing of the chapter 7 petition, although they may appear on a list of creditors, are not discharged." (citing *In re Clement*, 136 B.R. 557 (Bankr. C.D. Cal. 1992)). Similarly, pursuant to the automatic stay provision in 11 U.S.C. § 362(a) ("Section 362(a)"), "the filing of a bankruptcy petition operates as a stay against various acts of creditors, but only as to *pre-petition* debts." *In re Galgano*, 358 B.R. 90, 97 (Bankr. S.D.N.Y. 2007) (emphasis in original) (citation omitted); *see also Morillo v. Wells Fargo Bank, N.A.*, No. 19-CV-8183, 2020 WL 2539068, at *2 (S.D.N.Y. May 19, 2020) ("Generally, after filing a bankruptcy petition, an automatic stay arises pursuant to 11 U.S.C. § 362(a), which, in practice, stops creditors from collecting *pre-petition* debts while the debtor attempts to reorganize." (emphasis added) (citing *In re Abbott*, No. 9-37125, 2010 WL 1780059, at *3 (Bankr. S.D.N.Y. May 4, 2010))); *In re Pezzo*, No. 15-CV-162, 2015 WL 5853862, at *2 (S.D.N.Y. Oct. 7, 2015) ("In practice, the stay stops creditors from collecting *pre-petition* debts from the debtor while the debtor attempts to reorganize.") (emphasis added) (citing *In re Abbott*, 2010 WL 1780059, at *3)).

Appellant filed his Petition on April 28, 2023, (*see* Petition), and according to Appellant's amended schedules, the Debts accrued between November 2, 2023, and February 19,

[3] The order for relief, as used in Section 727(b), means the bankruptcy petition. *See* 11 U.S.C. § 301(a) ("A voluntary case . . . is commenced by the filing with the bankruptcy court of a petition . . . by an entity that may be a debtor . . . ."); 11 U.S.C. § 301(b) ("The commencement of a voluntary case . . . constitutes an order for relief . . . .").

2025, (*see* Amended Schedules 4, 5, 18.) Thus, it is clear, and Appellant does not dispute, (*see generally* Appellant's Br.), that the Debts accrued after Appellant filed his Petition. Consequently, the Debts did not arise before the date of the order for relief and are therefore beyond the scope of the discharge Appellant was eligible to receive under Section 727(b). *See In re Xiao*, No. 22-11540, 2025 WL 2498023, at *10 (Bankr. S.D.N.Y. Aug. 30, 2025) ("[A] discharge under section 727 can only affect debts that existed as of the commencement of the bankruptcy case."). Similarly, the Debts are outside the scope of the automatic stay Appellant was entitled to under Section 362(a), so Appellees did not violate Section 362(a) by making continued efforts to collect on the Debts. *See In re A. Tarricone, Inc.*, 77 B.R. 430, 432 (Bankr. S.D.N.Y. 1987) ("The automatic stay imposed under 11 U.S.C. § 362(a)(6) does not restrain actions to collect claims against the debtor that arose after the commencement of the bankruptcy case; the stay relates only to prepetition claims."); *In re Galgano*, 358 B.R. at 97 ("[T]he filing of a Chapter 7 petition does not operate as a stay as to any debt that arises post-petition."). Consequently, the Bankruptcy Court correctly concluded that Appellees "did not violate the automatic stay by seeking repayment" of the Debts. (Bankruptcy Court Decision 7.)

2. Appellees' Failure to Object Within 60 Days

Next, the Court will address, in turn, the numerous arguments raised by Appellant on appeal. Appellant contends that even if the Debts accrued after he filed his Petition, and were thus outside the scope of the automatic stay, "[t]he question of pre-petition and post-petition debt is irrelevant to the present matter, as most of the relief requests and causes raised by [the Motion] are based in elements separate from any pre-existing automatic stay." (Appellant's Br. 18.) Appellant first argues that Appellees, as creditors, had "a 60-day limit to object to the inclusion of their debt in a bankruptcy." (*Id.* at 25.) Consequently, Appellant contends, because Appellees

failed to object within 60 days of the filing of Appellant's amended schedules, the Bankruptcy Court "erred in not upholding a usually strictly-enforced statutory requirement[] and [in] ruling that by failing to raise a timely objection, [Appellees] had consented to have their debt included in the bankruptcy discharge." (*Id.* at 25–26.)

Pursuant to Federal Rule of Bankruptcy Procedure 4007(c) ("Rule 4007(c)"), "a complaint to determine whether a debt is dischargeable under § 523(c) must be filed within 60 days after the first date set for the § 341(a) meeting of creditors." Fed. R. Bankr. P. 4007(c).[4] However, the language of Rule 4007(c) makes clear that Rule 4007(c) does not impose a 60-day time limit on every objection. Instead, Rule 4007(c) only imposes a 60-day time limit when the objection is made to determine whether a debt is dischargeable under 11 U.S.C. § 523(c) ("Section 523(c)"). *See In re McKoy*, 211 B.R. 843, 846 (E.D. Va. 1997) ("Rule 4007(c) establishes a strict time limit for filing a complaint to determine dischargeability *under § 523(c)*.") (emphasis added). Section 523 contains a list of exceptions to discharge. *See* 11 U.S.C. § 523. For example, pursuant to Section 523(a)(1)(C), a discharge does not cover "a tax or customs duty . . . with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat." However, Section 523(c) provides that:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

[4] The Court will treat all references to Section 523 and its subsections as references to 11 U.S.C. § 523 and its subsections.

11 U.S.C. § 523(c)(1); *see also File v. Rashid*, No. 24-CV-2481, 2026 WL 1864138, at *4 (E.D.N.Y. June 29, 2026) ("Exemptions for *pre-petition debts* arising from . . . *Sections 523(a)(2), (a)(4), and (a)(6)* [] must be invoked by the creditor . . . within the [60]-day period established by Federal Rule of Bankruptcy Procedure 4007(c).") (emphases added) (citations omitted)). Section 523(a)(2) covers debt "for money, property, services, or an extension, renewal, or refinancing of credit" obtained through various forms of fraud, and Section 523(a)(4) covers debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." Additionally, Section 523(a)(6) covers debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." In sum, the 60-day time limit provided by Rule 4007(c) is only imposed when Section 523(c) is implicated, and Section 523(c) is implicated only when the basis for the objection to discharge is one of the limited exceptions to discharge covered by Section 523(a)(2), (4), or (6), none of which relate, in any way, to debts accrued post-petition, which, rather than being covered by an exception to discharge, fall outside the scope of discharge as defined by Section 727(b). *See File*, 2026 WL 1864138, at *4 (noting exemptions for "pre-petition debts" are subject to Rule 4007(c)'s 60-day period). Consequently, Appellees were not obligated, pursuant to Rule 7004(c), to raise an objection within 60 days on the basis that the Debts were accrued post-petition.

3. Promissory Estoppel

Appellant next argues that, even if the Debts are outside the scope of the automatic stay, and discharge, "promissory and equitable estoppel" are "applicable in this situation, and they are not affected by the status of [the Debts] as pre-petition or post-petition." (Appellant's Br. 21–22.) Specifically, Appellant asserts that Appellees "were contacted[] and informed their debt would be added to a pre-existing bankruptcy" and Appellees "voluntarily agreed to discharge the

debts and cease collection attempts." (*Id.* at 18–19.) Consequently, Appellant contends that "whether or not [the Debts] would have been eligible for a chapter 7 bankruptcy normally, [Appellees] repeatedly made promises to discharge the [Debts] and correct [Appellant's] credit, which [Appellant] reasonably relied upon." (*Id.* at 21.)

"The bankruptcy court's subject matter jurisdiction originates with 28 U.S.C. § 1334." *In re Old Carco LLC*, 529 B.R. 42, 52 (Bankr. S.D.N.Y. 2015). Pursuant to 28 U.S.C. § 1334(b), subject to specified limitations, "the district courts shall have . . . original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphases added). Pursuant to 28 U.S.C. § 157(a), district courts may refer "any or all cases" covered by § 1334(b) "to the bankruptcy judges for the district." 28 U.S.C. § 157(a). This Court refers "all such proceedings . . . to the bankruptcy court." *Gewirtzman v. Markowitz*, 646 B.R. 604, 612 (S.D.N.Y. 2022) (quotation marks omitted) (quoting *AJ Ruiz Consultoria Empresarial S.A. v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 22-CV-521, 2022 WL 1831171, at *2 (S.D.N.Y. June 3, 2022)). Proceedings arise under Title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011) (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–109 (2d Cir. 2006)); *see also In re Ames Dep't Stores, Inc.*, 542 B.R. 121, 135 (Bankr. S.D.N.Y. 2015) ("'Arising under' jurisdiction relates to federal question claims of a particular type—those arising under [T]itle 11 of the United States Code (i.e., the Bankruptcy Code)."). Proceedings "'arise in' a bankruptcy case if they 'are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy.'" *In re AOG Ent., Inc.*, 569 B.R. 563, 574 (Bankr. S.D.N.Y. 2017) (quoting *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (per curiam)); *see also In re Extended Stay*

*Inc.*, 418 B.R. 49, 58 (Bankr. S.D.N.Y. 2009) ("A claim 'arises in' a case under the Bankruptcy Code only if the claim 'would have no existence outside of the bankruptcy.'" (quoting *In re Riverside Nursing Home*, 144 B.R. 951, 955 (S.D.N.Y. 1992)). Proceedings are "related to a case under [T]itle 11 . . . if the outcome might have a conceivable effect on the estate." *In re Extended Stay Inc.*, 418 B.R. at 55 (quotation marks omitted) (quoting *In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008); *see also In re Sterling Optical Corp.*, 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003) ("An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." (quoting *Weisman v. Se. Hotel Props. Ltd. P'ship*, No. 91-CV-6232, 1992 WL 131080, at *3 (S.D.N.Y. June 1, 1992)).

The Court need not reach the merits of Appellant's promissory estoppel claim because the Bankruptcy Court lacks the subject matter jurisdiction to resolve the claim, because it does not arise under, arise in, or relate to Title 11. First, promissory estoppel, as a cause of action, is created by state law, not Title 11. *See Billinger v. Bell Atl.*, 240 F. Supp. 2d 274, 286 (S.D.N.Y. 2003) (noting that the "[p]laintiff's claims of promissory estoppel and breach of contract arise under state law"). Further, the elements of promissory estoppel are defined by state law, not Title 11. *See Stein v. Gelfand*, 476 F. Supp. 2d 427, 436 (S.D.N.Y. 2007) ("The elements of promissory estoppel *under New York law* are a clear and unambiguous promise, reasonable and foreseeable reliance, and resulting injury." (emphasis added) (quotation marks omitted) (quoting *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 381 (S.D.N.Y. 1998)). Consequently, Appellant's promissory estoppel claim is not a federal question claim arising under Title 11.

Second, state law claims may still arise in Title 11 when the claims "are really an extension of the proceedings already before the bankruptcy court." *Baker*, 613 F.3d at 350. However, the factual basis for Appellant's claim is that Appellees "repeatedly made promises to discharge the [Debts] and correct [Appellant's] credit, which [Appellant] reasonably relied upon." (Appellant's Br. 21.) The analysis of whether the conduct alleged by Appellant is sufficient to satisfy the elements of promissory estoppel is entirely separable from the bankruptcy context, because it turns on a determination of whether Appellees made the promises alleged by Appellant, whether Appellant reasonably and foreseeably relied on that promise, and whether Appellant suffered injury because of his reliance. Appellant's promissory estoppel claim demands no interpretation of Title 11 or of the proceedings that occurred before the Bankruptcy Court, and is, consequently, not an extension of those proceedings. *See, e.g.*, *Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 16 n.5 (S.D.N.Y. 2019) ("The state law claims in this case are not brought under a provision of Title 11, and therefore the claims plainly do not 'arise under' Title 11. Moreover, the state law claims exist independent of the bankruptcy proceeding, and therefore do not 'arise in' Title 11." (citation omitted)); *In re Omega Corp.*, 173 B.R. 830, 834 (Bankr. D. Conn. 1994) ("The instant proceeding does not 'arise under' [T]itle 11 because it does not involve enforcement of the Plan, nor does it 'arise in' this . . . case merely because it was filed in this case." (citation omitted)).

Third, the promissory estoppel claim is unrelated to Title 11 because it stands to have no conceivable effect on the bankruptcy estate. The subject of the promissory estoppel claim is post-petition debt that lies outside the scope of a bankruptcy discharge and the automatic stay. *See supra* Section II.B.1 (finding that "the Debts did not arise before the date of the order for relief, . . . are beyond the scope of the discharge Appellant was eligible to receive, . . . [and] are

outside the scope of the automatic stay"). Even if the Debts were voided on a promissory estoppel basis, the Debts would still lie outside Appellant's bankruptcy estate. Promissory estoppel, in that case, would act as an independent and entirely distinct basis for relief. Consequently, the resolution of the promissory estoppel claim has no bearing on, and is entirely unrelated to, Title 11. *See Leon v. Couri*, No. 98-CV-5028, 1999 WL 1427724, at *3 (S.D.N.Y. May 26, 1999), *report and recommendation adopted*, 2000 WL 42204 (S.D.N.Y. Jan. 18, 2000) (finding no jurisdiction over civil proceeding where the "outcome of the civil proceeding could not have any conceivable effect on the bankruptcy estate."). In sum, Appellant's promissory estoppel claim does not arise from, arise in, or relate to Title 11, and thus falls outside the subject matter jurisdiction of the Bankruptcy Court.[5]

[5] Appellant also asserts claims for negligent supervision, negligent training, negligent misrepresentation and fraud as "other causes of action and relief requests that are unaffected by debt classification." (Appellant's Br. 22.) The Court's conclusion that Appellant's promissory estoppel claim falls outside the subject matter jurisdiction of the Bankruptcy Court applies with equal force to Appellant's negligent supervision, negligent training, negligent misrepresentation, and fraud claims, as these claims have a factual basis that overlaps with his promissory estoppel claim, that being Appellee's alleged promises to discharge the Debts during Appellant's phone calls. Specifically, regarding negligent supervision, Appellant alleges that Appellees "failed to adequately train [their agents] to handle bankruptcy matters[,]" because during Appellant's phone calls, "despite acknowledging [that Appellant's] account is in bankruptcy, they proceed[ed] in the same call to attempt to 'collect a debt' . . . ." (Reply 8, *In re Curtis-Shanley*, No. 23-22314, (Bankr. S.D.N.Y. Aug. 22, 2025).) Regarding negligent misrepresentation, Appellant alleges that during his phone calls, Appellees' agents "represented that [the Debts] would be cleared . . . ." (*Id.*) Regarding fraud, Appellant alleges that Appellees "failed to discuss the distinctions . . . between pre- and post-filing debt . . . and repeatedly at every conversation misrepresented their intention to accord to [the Debts] the same treatment as to pre-petition debt . . . ." (*Id.* at 9.) Similar to Appellant's promissory estoppel claim, even if these claims are meritorious and would entitle Appellant to relief, the basis for the relief would be unrelated to Title 11 and the proceedings which occurred before the Bankruptcy Court.

4. Due Process

Appellant next argues that Judge Kyu Young Paek, who presided over Appellant's proceedings before the Bankruptcy Court, violated his due process rights because Judge Paek's "remarkably different demeanor between the [P]arties is . . . evidence of bias." (Appellant's Br. 24.) Specifically, Appellant asserts that Judge Paek "repeatedly interrupted [Appellant] and didn't allow him to state his case[,] . . . his choice of language was continually condescending[,] . . . [and] he was even derogatory and dismissive in his language when describing the extensive evidence that [Appellant] had brought . . . ." (*Id.*)

"Due process guarantees 'an absence of actual bias' on the part of a judge." *Grant-Byas v. Superintendent of Coxsackie Corr. Facility*, No. 23-CV-3628, 2025 WL 1001258, at *13 (S.D.N.Y. Apr. 1, 2025) (quoting *Williams v. Penn.*, 579 U.S. 1, 8 (2016)); *see also Giles v. Lamanna*, No. 22-CV-5804, 2024 WL 3678282, at *23 (S.D.N.Y. Apr. 15, 2024) (same). However, "the Supreme Court has found matters relating to judicial bias to impinge upon a party's right to a fair trial in only extreme circumstances generally involving the clear appearance of a conflict of interest and a high probability of actual bias on the part of the judge in question." *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2019 WL 1900472, at *4 (E.D.N.Y. Apr. 29, 2019); *see also St. Clair v. Cadles of Grassy Meadows II, L.L.C.*, 550 B.R. 655, 666 (E.D.N.Y. 2016) (same) (citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009)). For example, "[s]harp criticisms of attorneys and litigants clearly do not fall into this category." *St. Clair*, 550 B.R. at 667.

Judge Paek did not deprive Appellant of his due process rights because Judge Paek's demeanor and language during Appellant's oral argument did not provide any appearance of a

conflict of interest or the high probability of actual bias.[6] (*See generally* Oral Arg. Tr., *In re Curtis-Shanley*, No. 23-22314 (Bankr. S.D.N.Y. Oct. 13, 2025), Dkt. No. 56.) While Judge Paek interrupted Appellant during oral argument, his interruptions were in direct response to the assertions made by Appellant, giving this Court no reason to conclude that Judge Paek's interruptions were motivated by judicial bias against Appellant. For example, during oral argument, Appellant posited that his Motion constituted an adversary proceeding, and Judge Paek interrupted Appellant to assert that the Motion was a contested matter but not an adversary proceeding. (Oral Arg. Tr. 7.) Moreover, "whether to hold oral argument at all, much less how to manage that argument, is the . . . judge's call . . . ." *Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 20-CV-9155, 2026 WL 1363083, at *2 n.1 (S.D.N.Y. May 15, 2026). Consequently, the Court is satisfied that Judge Paek's management of Appellant's oral argument was an appropriate use of discretion, not a due process violation.

While Appellant also describes Judge Paek's language and demeanor as evidence of judicial bias, the Court disagrees with Appellant's interpretation of Judge Paek's disposition during the oral argument. For example, while Appellant contends that Judge Paek used derogatory and dismissive language when addressing phone call transcripts provided by Appellant, Judge Paek asserted that he "reviewed the transcripts" and would "take the transcripts for what they're worth." (Oral Arg. Tr. 11.) From the Court's perspective, Judge Paek appears

---

[6] Appellant's Brief does not specify when the alleged due process violations occurred. (*See generally* Appellant's Br.) However, given that the instances described by Appellant appear to involve his personal interaction with Judge Paek, the Court presumes that Appellant is referring to his oral argument before Judge Paek regarding the Motion. (*See* Appellant's Br. 24 (describing the relevant interactions).) In particular, Appellant's contention that Judge Paek violated his due process rights by "repeatedly interrupt[ing]" him appears to relate to oral argument. (*Id.*)

to be considering, not dismissing, the transcripts submitted by Appellant, and asserting that he will assign the appropriate probative weight to the evidence. Further, even if Appellant was correct that Judge Paek was condescending and dismissive, Judge Paek's conduct would still be much closer to sharp criticism than a due process violation.[7]

5. Default Judgment

Appellant next argues that the Bankruptcy Court "erred by mischaracterizing the proceedings." (Appellant's Br. 15.) Specifically, Appellant contends that because his Motion "was both to compel and to sanction, it was inherently an adversary proceeding[,]" (*id.* at 13), as "[a] motion to enforce an automatic stay of collection becomes an adversary proceeding once an attempt to collect damages is attached to it[,]" (*id.* at 15.) Appellant asserts that his Motion was, in effect, a complaint, which Appellees failed to file timely answers to, constituting a default. (*Id.* at 36.) Consequently, Appellant contends, the Bankruptcy Court erred by not entering a default judgment in Appellant's favor. (*Id.* at 15.)

[7] Appellant also provides, as evidence of judicial bias, that "[i]n the case of [*In re Alexander*], just five months earlier, [Judge Paek] acknowledged that a motion relating to an automatic stay[] that sought monetary damages[] was not a contested matter but an adversary proceeding." (Appellant's Br. 23.) However, the Court disagrees with Appellant's interpretation. The only assertion Judge Paek made in that case with respect to adversary proceedings is that "[e]ntry of money judgments as part of an adversary proceeding is common." *In re Alexander*, No. 24-35982, 2025 WL 853859, at *5 (Bankr. S.D.N.Y. Mar. 18, 2025). The assertion that "adversary proceedings are the only appropriate channel for receiving a money judgment in a bankruptcy case[,]" which Appellant attributes to *In re Alexander*, comes from *In re Hood Landscaping Prods.*, 639 B.R. 785, 787 (Bankr. M.D. Ga. 2022), which Judge Paek did not preside over. Moreover, even if Judge Paek's decision regarding Appellant's Motion was inconsistent with his previous holdings, "[c]laims of judicial bias 'must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality.'" *Kinchen v. St. John's Univ.*, 830 F. App'x 691, 692 (2d Cir. 2020) (summary order) (quoting *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 277 (2d Cir. 2009)).

Pursuant to Federal Rule of Civil Procedure 55 ("Rule 55"), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the party's default has been entered, Rule 55 allows the plaintiff to seek entry of a default judgment. *See* Fed. R. Civ. P. 55(b)(1)–(2); *see also Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, No. 05-CV-10098, 2006 WL 2850210, at *1 (S.D.N.Y. Oct. 4, 2006) ("Default under Rule 55 involves two steps: the entry of the default by the clerk of the court pursuant to Rule 55(a), and the subsequent entry of a default judgment by the clerk under Rule 55(b)(1) or by the court under Rule 55(b)(2)."). Pursuant to Federal Rule of Bankruptcy Procedure 7055, Rule 55 "applies in an adversary proceeding." Fed. R. Bankr. P. 7055. When a party defaults, "a district court must accept as true all of the *factual* allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Colortree Grp., LLC v. Autotrol Corp.*, No. 22-CV-5375, 2023 WL 3901593, at *2 (S.D.N.Y. June 8, 2023) (emphasis added) (quotation marks omitted) (quoting *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014); *see also Caytas v. Maruszak*, No. 06-CV-985, 2007 WL 2456956, at *2 (S.D.N.Y. Aug. 22, 2007) ("Ordinarily, when a default is entered, all well-pleaded *factual* allegations in the complaint are accepted as true." (emphasis added) (citation omitted)). "The corollary of this rule, however, is that a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Michael Grecco Prods., Inc. v. N.Y. Performing Arts Acad., Inc.*, No. 23-CV-8120, 2025 WL 370831, at *2 (S.D.N.Y. Feb. 2, 2025) ("*If* the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of

damages and enter final judgment in that amount." (emphasis added) (citation omitted)); *Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 454 (S.D.N.Y. 2024) ("That said, a court 'must still satisfy itself that the plaintiff has established a sound *legal* basis upon which liability may be imposed.'") (emphasis added) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

Here, the Court need not reach the question of whether Appellant's Motion should be characterized as a complaint, or if Appellee's failure to issue a timely response constitutes a default. Even if Appellees are treated as defaulting Parties, and their default is entered pursuant to Rule 55(a), Appellant would not be entitled to a default judgment pursuant to Rule 55(b). While it is true that if Appellees were treated as defaulting parties, the Court must treat the factual allegations made in Appellant's Motion as true and draw all reasonable inferences in Appellant's favor, Appellant has failed to assert a sound legal basis to support the imposition of liability on Appellees and award Appellant the relief sought. As established above, the Debts fall outside the scope of the automatic stay because they accrued, in their entirety, after Appellant filed his Petition. *See supra* Section II.B.1 (finding that "the Debts did not arise before the date of the order for relief, . . . are [] beyond the scope of the discharge Appellant was eligible to receive, . . . [and] are outside the scope of the automatic stay"). Consequently, Appellees' continued efforts to collect the Debts does not constitute a violation of the automatic stay or discharge warranting the imposition of liability. Additionally, Appellant's contention that Appellees consented to the automatic stay, and thus were bound by it, through their failure to object to Appellant's amended schedules, is unavailing. *See supra* Section II.B.2 (finding that "Appellees were not obligated, pursuant to Rule 7004(c), to raise an objection within 60 days on the basis that the Debts were accrued post-petition"). Furthermore, even if Appellant's promissory estoppel claim was meritorious, the Bankruptcy Court lacks subject matter

jurisdiction to resolve that claim. *See supra* Section II.B.3 (finding that "Appellant's promissory estoppel claim does not arise from, arise in, or relate to Title 11, and thus falls outside the Bankruptcy Court's subject matter jurisdiction"). Lastly, Appellant's due process claim would be unmeritorious even if Appellant's factual allegations were accepted as true. *See supra* Section II.B.4 ("Further, even if Appellant was correct that Judge Paek was condescending and dismissive, Judge Paek's conduct would still be much closer to sharp criticism than a due process violation."). In sum, without a legal basis to justify the imposition of liability on Appellees, Appellant is not entitled to a default judgment pursuant to Rule 55(b), regardless of whether his Motion is properly construed as a complaint.

## III. Conclusion

For the reasons set forth above, the appeal is denied, and the order of the Bankruptcy Court is affirmed. The Clerk of the Court is respectfully directed to mail a copy of this Order to Appellant and close the case.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge